UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| William Reed Hayward | § | |
| Lulus Wang Hayward | § | Case No. 19-10286-tmd |
| | § | Opening Date: 03/05/2019 |
| Debtors. | § | Closing Date: 06/17/2019 |
| | § | Chapter [7] |
| | § | |
| William Reed Hayward | § | |
| | § | |
| Plaintiff, | § | Adv. Proc. No. 23-01004-smr |
| | § | |
| v. | § | |
| | § | |
| UNITED STATES DEPARTMENT OF | § | **FILED** |
| EDUCATION (DOE/ED) | § | |
| | § | JUN 22 2023 |
| | § | |
| | § | U.S. BANKRUPTCY COURT |
| Defendant[s]. | § | BY_____DEPUTY |
| | § | |

## Reply to Defendant's Motion for Summary Judgment Filed on 06/14/23

### I. Defendant for a Summery Judgment should be Denied

The Plaintiff request that the defendant's Motion for Summary Judgment filed on

06/14/2023 be denied because the Defendant took "11 U.S.C. § 727(b)" Out of Context

and the Intent of the meaning of "debts that arose before the date of the order for relief

under this chapter" with exception and control over to 11 U.S.C. §523(A)(8). The

meaning of 11 U.S.C. § 727(b) gives Exception and procedure over to 11 U.S.C. §523(A)

(8) that address a required procedures to discharge Plaintiff's DOE Federal Student Loan

Debt. In a Chapter 7 Federal Bankruptcy, 11 U.S.C. §523(A)(8) address a process of

DOE Student Loan by **Undue Hardship** discharge. The 11 U.S.C. § 727(a) Bankruptcy

regulation/act address all Chapter 7 Debt except DOE Federal Student Loan Debit.

Student Loan debt is addressed in "11 U.S.C. § 727(b)" through "11 U.S.C.523(A)(8)"

*/ of 6*

There is not time requirement set for Federal Bankruptcy Adversary Proceeding other than adjudication being filed in this UNITED STATES BANKRUPTCY COURT WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION at or from 03/05/2019 of the Chapter 7 Bankruptcy filing. There is a total sum time from 03/05/2019 to 06/20/2023 to address the DOE Student Loan debt.

The Adversary Proceeding should address the present DOE student loan sum total debt between Chapter 7 Federal Bankruptcy filing date and added now sum filing date of Adversary Proceeding processing sum debt. The Adversary Proceeding chain of custody sum of DOE debt should be all interest and fees acquired in forbearance fees and/or consolidation fees of the same DOE debt. Since there is no time set between filing a case and the original Bankruptcy than the total DOE debt must include be all interest and fees acquired in forbearance fees and/or consolidation fees acquired and still acquiring during the time of Adversary Proceeding. The Defendant wants define any money adjusts and sum totals of original DOE debt caused by Defendant's fees, acquired interest, consolidation and forbearance procedures as new debt, which cannot happen.

## II. Student Loan History 11 U.S.C. §523(A)(8) Rules & Regulations

The 11 U.S.C. §523(A)(8) rules/regulation removed the auto requirement of discharging all student loan debt that was 7-years or more old. The 11 U.S.C. §523(A)(8) rules/regulation left the only avenue of discharge of student loans through filing Adversary Proceeding declaring that the Plaintiff could not pay his student loans because the debt would impose an **Undue Hardship** on the debtor. The only problem with 11 U.S.C. §523(A)(8) it dose layout a time frame to file a Adversary Proceeding on discharging student loan debt. The filing time frame does not address interim acquired

2 of 6

interest and fees acquired in forbearance fees and/or consolidation fees of the same DOE debt.

The Plaintiff's DOE Student Loans are held through a Student Loan Server (loan servicer) Companies. The DOE has programs for the Plaintiff to file forbearances. The forbearances the Plaintiff's DOE student loans used were in COVID-19 payment halt of student loan payment/ interest, Loan Payment Pause, Income-Based Repayment (IBR) plan, and Loan Consolation Plans that increase sum totals of DOE debt. The Federal Bankruptcy 11 U.S.C. § 727(b) requires an Adversary Proceeding through 11 U.S.C. §523(A)(8). It dose not address original DOE Student Loan forbearance types. It doe not acquired Interest debt and consolidation fees in making delay payments that effect Adversary Proceeding debt sum totals.

### III. No File Time Required in Adversary Proceeding

The main problem is that even though these Federal Debt delays between filing an Adversary Proceeding casing DOE forbearances with some of the programs acquiring interest in changing the original DOE debt owed at the time of filing Chapter 7 Bankruptcy filed on 03/05/2023. The only Student Loans that meets the 10 Year old+ listed are in the Original DOE Bankruptcy, which is Navient Loan Services showing a total of **288,754.04** (May 05, 2019 Chapter 7 Form e/f Line 4.2 dated consolidated Loan 03/24/2006). On August 08, 2021 through Navient Loan Services Under DOE IBR plan, Navient Loan Services Total DOE Debt sum was **$ 313,134.01** (see Exhibt P, Navient 08/05/2021 IBR plan). On 09/14/2022 Navient DOE debt was Consolidated through DOE Great Lakes to meet DOE loan server requirements to stop monthly payments through IBR / COVID-19 forbearances. Now the DOE same debt owed loan is

transferred to DOE Nelnet Loan Services, Account: E655942288, with an owed sum of **$ 363,483.00** and is now in IBR / COVID-19 forbearances until January 1, 2025.

## IV. The New November 17, 2022 DOE/DOJ Guidance Document

To address the above issues on timing and student loan debt, The Department of Justice (Department), issued in coordination with the Department of Education (Education) Guidance for Department Attorneys Regarding Student Loan Bankruptcy Litigation, Dated on November 17, 2022 and updated on March 7, 2023 (see Exhibit N). The Guidance is intended to redress these concerns so that discharges are more readily obtained, by 1) to setting "clear, transparent, and consistent expectations" for discharge, 2) reducing burdens on debtors by simplifying the process, and 3) increasing the number of cases in which a settlement is offered. According to the new act on undue hardship discharges, student loans should be adjudicated based on the test first developed in Brunner v. New York State Higher Educ. Servs. Corp. and the "totality of circumstances" test for determining undue hardship, though in practice the test are similar to *Brunner*.

The DOE and the Guidance act (see Exhibit N) requires that Plaintiff's consolidation of undue hardship student loans so to include FFEL and Perkins loans. This allows ECMC to accept assignment of FFEL loans and makes them DOE loans. The Navient Services Loan is dated for 2006, it meets the 10-year-old discharge requires. Therefore, due to the consolidation of the loans the discharge of the Plaintiff's DOE Student Loans meets Undue Hardship on of the discharge requirements.The progression of Navient Loan Services to DOE Great Lakes to DOE Nelnet Loan Services cover all Item listed loans 1-21 ranging from a dates of 1979-2006 listed in Defendant's Summary Judgment pages 1 and 2. This provides a DOE custody line of ownership of original DOE Student Loan

debt to meet the new DOE/DOJ Guidelines for Partial Payments of DOE Loans of 10

Year+ old student loans (see Exhibit N).

## V. Defendant Partial Payment Offer of Student Loans

Under the New Guidance act (see Exhibit N) through the Brunner test, Plaintiff

qualifies for Partial Payment Offer of student loans that are least 10 years old. The

Plaintiff's loans from Navient Loan Services are dated 03/24/2006, which correspond to

DOE consolidated loan dated 09/14/2022 and now held by DOE Nelnet Loan Servics,

(Account: E655942288) at a sum of **$363,483.35** . Loan payment set to "0.0 payments, set

by **IRB and COVID19 PANDEMIC FORBEARANCE** with payment due date set to

01/01/2025. Plaintiff's Email copies shows that the Defendant was in the process of

offering a discharged student loan of about **$360,000.00** (see Exhibit M), which is the total

of DOE Nelnet Loan Services debt. This was a Partial Payment Offer as of September

14, 2022 consulate also debt listed in Defendant's Summery Judgment Request (see

Defendant's Exhibit page 3 table Item no. 32). The DOE/DOJ was willing to discharge

the original Navient debt as a Partial Discharge offer. The Defendant considered the 2022

consolidation DOE debt to the chain of custody and being part of the original debt at

Chapter 7 Bankruptcy discharge listed through 11 U.S.C. §523(A)(8).

## VI. Good Faith Effort to Pay Back Student Loan Requirements

Under the New Guidance (see Exhibit N) and the Brunner test, the Plaintiff must

show that Plaintiff has made good faith effort to pay back his student loan. Good Faith

efforts include engaging meaningfully with Education or their Loan Servicer, (same DOE

debt of Navient sent to Nelnet Loan Servicer), regarding payment options, forbearance

and deferment options, or loan consolidation forbearance or participating in IDRPs,

consolidation of Student loans showing 10 years from the beginning of the payment process, and responding to outreach from a servicer or collector. The Adversary Proceeding requires the court to trace the Student Loan debt from the time of his filling a Chapter 7 Bankruptcy through his payment/forbearance progression of his debt, keeping Plaintiff from going into default, to a hardship discharge resolution by the Court Judge.

## VII. Conclusion

Consolidation and Forbearances keep the Original Bankruptcy Student Loans current with no student loan defaults until the Plaintiff can file a Student Loan Adversary Proceeding for Undo Hardship discharge. Updating the original DOE debt allows this Bankruptcy Court to adjudicate the Original DOE Student Loan debt filed at Chapter 7 Bankruptcy. The Adversary Proceeding requires the DOE/DOJ to use its own New Guidance (see Exhibit N) and the Brunner test so the assigned Bankruptcy Judge can use Undue Hardship Discharge procedures in Plaintiff's listed DOE Student Loans.

## VIII. Relief

The request by the Defendant for a Summery Judgment should be denied because 11 U.S.C. §523(A)(8) defines Forbearances or Consolidation of the same/ original DOE Debt not as new debt but requires a process being used to keep Plaintiff from going into student loan default.

Dated: June 20, 2023

William R. Hayward
William R. Hayward

William Reed Hayward, Pro Se

Ph: 512-353-2223
609 Oak Meadow
San Marcos, TX  78666-8358

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

|  |  |  |
|---|---|---|
| William Reed Hayward<br>Lulus Wang Hayward<br><br>Debtors. | §<br>§<br>§<br>§<br>§<br>§ | Case No. 19-10286-tmd<br>Opening Date: 03/05/2019<br>Closing Date: 06/17/2019<br>Chapter [7] |
| William Reed Hayward<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>EDUCATION<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **ADVERSARY NO. 23-1004-smr** |

## CERTIFICATE OF SERVICE

I certify that on June 20, 2023 a copy of Summary Judgment Reply by

Plaintiff was served by Email (allowed by Steven B. Bass/DOJ Defendant per phone call on

Febuary 24, 2023), Email at steven.bass@usdoj.gov., as indicated below:

STEVEN B. BASS, Defendant
Assistant United States Attorney
903San Jacinto Blvd., Suite 334
Austin, Texas  78701
Ph. 512-916-5858/Fax: 512-916-5854
Email: steven.bass@usdoj.gov

Respectfully submitted:

_William R. Hayward_

William Reed Hayward, Pro se, Plaintiff
609 Oak Meadows
San Marcos, TX  78666-8358
Ph: 512-353-2223
Email: lulusostrich@grandecom.net

**Plaintiff's Exhibit M Dept-of-Ed (DOE) Partial Payment Offer 05/18/2023**

**Adversary Procceeding No.: 23-01004-smr**

----- Forwarded message from Steven.Bass@usdoj.gov -----
Date: Thu, 18 May 2023 21:04:20 +0000
From: "Bass, Steven (USATXW)" <Steven.Bass@usdoj.gov>
Subject: haywood student loans
    To: "lulusostrich@grandecom.net" <lulusostrich@grandecom.net>

Mr Haywood,  for your information the proposed discharged student loans are about $360,000.00 ,  the non Grand Canyon Univ debt.  As I previously indicated, if your current medical condition prohibits you from working , you can amend your attestation form to update the information and we can resubmit.  steven
----- End forwarded message -----

----- Forwarded message from lulusostrich@grandecom.net -----
Date: Fri, 19 May 2023 14:27:09 -0500
From: lulusostrich@grandecom.net
Subject: Amended Attestation with Attachments, student loans 19April2023
    To: "Bass, Steven (USATXW)" <Steven.Bass@usdoj.gov>
    Cc: lulusostrich@grandecom.net, "Bass, Steven (USATXW)"
<Steven.Bass@usdoj.gov>

Steven Bass

Hello!

Attached is my Amended Attestation showing my broken Back/Spine that  took place on 12 April 2023 from passing out while stepping out to the  roof from a later.

Attached also is copy of VA evaluation of 5-Places of broken spine and  copy of emergency hospital records from VA.

I am also required to wear a back brace.

Please try and get all my Student Loans discharge to hardship,  disability, age, due to no work income, and to unable to make future  payments.

God Bless!
William R. Hayward

**Plaintiff's Exhibit M Dept-of-Ed (DOE) Partial Payment Offer 05/18/2023**      2

**Adversary Procceeding No.: 23-01004-smr**

----- Forwarded message from Steven.Bass@usdoj.gov -----
Date: Mon, 22 May 2023 17:35:35 +0000
From: "Bass, Steven (USATXW)" <Steven.Bass@usdoj.gov>
Subject: RE: [EXTERNAL] Hardship Discharge due to ability to Pay now and future
To: "lulusostrich@grandecom.net" <lulusostrich@grandecom.net>
Cc: "Keller, Chad" <chad.keller@ed.gov>

Mr Haywood,   the Dept of ED is reviewing  the amended   attestation form but disability
is only a factor in that analysis.  The disability discharge is not through the bankruptcy
process and must be pursued separately.   If you don't want to pursue that avenue that is
your choice.    If you think you can prevail in court, then that is your option and I suggest
we prepare for the docket call that is set for July 12th.   One hurdle you will have to
overcome under Brunner is that if you qualify for zero repayment under the income
contingent  determination,  then how can you not make that payment (element one) and
if you have made no payments on the loans,  then what effort have you made to pay your
student loan, element three.   Don't confuse the attestation analysis with the legal
requirements.  steven

----- Forwarded message from lulusostrich@grandecom.net -----
Date: Mon, 10 Apr 2023 16:37:34 -0500
From: lulusostrich@grandecom.net
Subject: Agree, Until 1 July 2023 Pre-Trial Conference on student loan discharge
To: "Bass, Steven (USATXW)" <Steven.Bass@usdoj.gov>, "Travieso, Tina
(USATXW)" <Tina.Travieso@usdoj.gov>
Cc: lulusostrich@grandecom.net, "Bass, Steven (USATXW)"
<Steven.Bass@usdoj.gov>, "Travieso, Tina (USATXW)" <Tina.Travieso@usdoj.gov>

Steven Bass

Hello!

I agree with you assessment and plans, No pre-trial conference with the court, we will
wait until 1 July 2023 for a resolution/decision from the Dept Of Ed.

God Bless!
William R. Hayward

**Plaintiff's Exhibit M Dept-of-Ed (DOE) Partial Payment Offer 05/18/2023**          3

**Adversary Procceeding No.: 23-01004-smr**

Quoting "Bass, Steven (USATXW)" <Steven.Bass@usdoj.gov>:
>William, I don't think a pre-trial conference with the court is necessary unless you think
it is. As we are waiting to hear from the Dept of Education regarding the proposed
settlement , and I don't know how long that will be, my plan is to wait and see what the
dept of ed has to say. If they agree the debt can be discharged , then there is nothing
more for us to do other than prepare an agreed judgment reflecting our agreement. If the
dept of ed has a different opinion then the matter is not over, we just have some more
work to do. Either way, if we don't hear something by July 1, we can discuss the matter
and then advise the court of where we are. I will follow up with the dept of ed
periodically. steven

**Page 3 of 3**

23-01004-smr Doc#13 Filed 06/22/23 Entered 06/23/23 15:23:37 Main Document Pg 11 of
Exhibit N Plaintiff's DO-ED/DOJ Bankruptcy Discharge Guidance of Student Loans
Adversary Proceeding No.: 23-01004-smr

# New Process to Discharge Student Loans in Bankruptcy

By **John Rao**
**December 12, 2022 (updated March 7, 2023)**

A new Guidance from the Department of Justice (Department), issued in coordination with the Department of Education (Education), has the potential to change bankruptcy practice dramatically. Until now, attorneys have not thought of bankruptcy as a way to help clients struggling with student loan debt. If the Guidance is implemented as intended, however, more bankruptcy debtors will be eligible for discharge of their student loans. Attorneys will need to become familiar with its terms in order to evaluate their clients' chances of obtaining an undue hardship discharge.

The Guidance recognizes that "some debtors have been deterred from seeking discharge of student loans in bankruptcy due to the historically low probability of success and due to the mistaken belief that student loans are ineligible for discharge." Another barrier to relief acknowledged by the agencies is the "cost and intrusiveness" of litigating an adversary proceeding. The Guidance is intended to redress these concerns so that discharges are more readily obtained, by 1) to setting "clear, transparent, and consistent expectations" for discharge, 2) reducing burdens on debtors by simplifying the process, and 3) increasing the number of cases in which a settlement is offered.

The Guidance is accompanied by two attachments: Attachment A - an Attestation form that debtors will submit that includes information used to evaluate a settlement, and Attachment B – a Sample Scenario that is a sample filled-in Attestation form based on a hypothetical case. Another version of this article that explains how to complete the Attestation form in a ten-step process is available here on NCLC's digital library.

Soon after the Guidance was released, in January 2023, the Department issued an updated Attestation and Sample Scenario. While many of the changes were technical corrections, several changes made the Attestation more consistent with the Guidance, and others may have a substantive impact. These changes are noted and discussed in this article.

## General Framework

The general framework for the Guidance is the application of the three-part test courts have used in deciding undue hardship, often referred to as the "*Brunner*" test. An earlier guidance on undue hardship issued by Education in 2015 took a similar approach. However, it simply rehashed the existing case law and actually made matters worse by restating Education's prior unhelpful policy positions, such as encouraging use of long-term income-driven repayment plans (IDRP) as a means to restrict bankruptcy discharges.[1] The new Guidance reevaluates many of these positions, often siding with interpretations of the test found in the better-reasoned court opinions.

It is important to note that this reimagining of the *Brunner* test is for purposes of case settlement only. If a pre-trial settlement is not reached in accordance with the Guidance, it is not binding on the positions that the agencies may take later in litigating the case. And while it also does not create any enforceable rights, debtor attorneys should use their advocacy skills to urge Education and the Department to follow the Guidance.

The Guidance states that it applies only to "bankruptcy proceedings" that were pending on the date the Guidance was issued, which was November 17, 2022, and to future bankruptcy proceedings. While the reference to "proceedings" rather than "cases" might suggest that the Guidance would apply to an adversary proceeding filed after November 17, 2022 in a re-opened bankruptcy case that was closed before November 17, 2022, we believe that the agencies intended it to apply only to pending and future bankruptcy cases. Rather than move to reopen closed cases, attorneys should consider alternatives, such as whether in appropriate circumstances a former client may wish to seek bankruptcy relief in a new case and then file an undue hardship adversary proceeding in the new case.

## Primer on Undue Hardship Discharge

If a student loan is the type of debt that falls within the coverage of section 523(a)(8) of the Bankruptcy Code, it may be discharged only if the bankruptcy court determines that "excepting such debt from discharge would impose an undue hardship on the debtor and the debtor's dependents."[2] The phrase "undue hardship" is not defined in the Bankruptcy Code. Most

---

[1] U.S. Dep't of Educ., Dear Colleague Letter Gen.-15-13, Undue Hardship Discharge of Title IV Loans in Bankruptcy Adversary Proceedings (July 7, 2015). *See* National Consumer Law Center, Student Loan Law (6th ed. 2019), § 11.7.6, updated at www.nclc.org/library.

[2] Some student loans or educational financial arrangements, particularly private loans that are not qualified educational loans, may be discharged in bankruptcy without proving undue hardship. See National Consumer Law Center, Student Loan Law (6th ed. 2019), § 11.2,

courts have adopted a test for determining "undue hardship" that is very similar, based on the test first developed in Brunner v. New York State Higher Educ. Servs. Corp.[3]  Some courts have adopted a "totality of circumstances" test for determining undue hardship, though in practice it is similar to *Brunner*.

The *Brunner* test requires the debtor to show:

> (1) **Present Circumstances** - the debtor cannot maintain, based on current income and expenses, a minimal standard of living for herself and her dependents if forced to repay the student loans;

> (2) **Future Circumstances** - additional circumstances exist indicating that the hardship is likely to persist for a significant portion of the repayment period of the student loans; and

> (3) **Good Faith** - the debtor has made a good-faith effort to repay the loans.

For a more detailed discussion of the undue hardship tests, see NCLC's Consumer Bankruptcy Law and Practice § 15.4.3.8.2 and NCLC's Student Loan Law § 11.4, updated at www.nclc.org/library.

Academic studies note that application of the *Brunner* (and totality) test has been random, arbitrary and unfair.[4]  Significantly, the Guidance provides a more objective framework for applying the *Brunner* factors and the totality test.  For the first present circumstances factor, the Guidance instructs Department attorneys to rely in part upon the IRS Collection Financial Standards in determining whether the debtor can maintain a minimal standard of living and also repay the student loans.  For the second future circumstances factor, there is a presumption that the debtor's inability to repay will persist if certain circumstances are applicable to the debtor's situation.  For the third good faith factor, the Guidance attempts to restrict discretion by providing objective criteria Department attorneys should consider in evaluating good faith.  Each of these factors will be discussed in detail below.

## Overview of Settlement Process

To obtain an undue hardship discharge settlement under the Guidance, the debtor must first initiate an adversary proceeding seeking a declaratory judgment that the student loan debt may

updated at www.nclc.org/library.

---

[3] Brunner v. N.Y. State Higher Educ. Servs. Corp. (*In re* Brunner), 46 B.R. 752 (S.D.N.Y. 1985), *aff'd*, 831 F.2d 395 (2d Cir. 1987).

[4] Rafael I Pardo & Michelle R. Lacey, *Undue Hardship in the Bankruptcy Courts: An Empirical Assessment of the Discharge of Educational Debt*, 74 U. Cin. L. Rev. 405 (Winter 2005).

be discharged. An adversary proceeding is a lawsuit within the bankruptcy case initiated by the filing of an adversary complaint, and is subject to Bankruptcy Rules that are almost identical to the Federal Rules of Civil Procedure. See Fed. R. Bankr. P. 7001–7087. Under the current fee schedule adopted by the Administrative Office of the U.S. Courts, there is no filing fee for an adversary complaint brought by a debtor in a bankruptcy case.[5] For a sample undue hardship complaint, *see* NCLC's Consumer Bankruptcy Law and Practice, Appx. G, Form 132, Complaint to Determine Dischargeability of Student Loan.

Attorneys should request that their clients obtain a complete list of their federal student loans by viewing their National Student Loan Data System (NSLDS) report at http://studentaid.gov, using their FSA ID. This database receives data from schools, guaranty agencies, the Direct Loan program, and other Education programs, and it should identify the lender, guaranty agency, or current servicer of each loan. All of the entities listed for the particular loan should be named as defendants in the adversary complaint unless it is clear that the entity no longer has an interest in the loan. However, it is important that the current holder of the loan be named as defendant. The United States Department of Education should be named as a defendant for all Direct loans and for all loans in which it serves as the guarantor.

Based on the Department of Education's contractual relationship with Educational Credit Management Corporation (ECMC), ECMC is authorized to accept assignment of FFEL loans when a borrower on the loan has filed bankruptcy. Thus, ECMC will typically move to intervene as a student loan guarantor agency and be substituted as a party defendant for the original guaranty agency named in the complaint by the debtor. At present, however, the Guidance applies only to the actions of the Department's attorneys while representing Education. We believe that Education will soon issue a similar Guidance (or Dear Colleague Letter) that will apply to guarantors and holders of FFEL and Perkins loans.

Similarly, the Guidance does not apply to holders of private student loans. However, if a settlement is reached with Education and other loan holders granting a discharge of the debtor's federal loans, this should put pressure on the private loan holders to follow suit.

The settlement process under the Guidance is triggered by the debtor submitting a completed Attestation form to the Department attorney, typically an assistant U.S. Attorney (AUSA), who is or will be representing Education in the adversary proceeding. Debtor attorneys should become familiar with the AUSAs in the local U.S. Attorney's office who handle undue hardship cases, and request their advice on how best they would like to receive the Attestation forms. Some AUSAs may be willing to accept the Attestation as soon as the adversary proceeding is filed, even before the complaint is served. The Guidance also instructs AUSAs to solicit the Attestation form from debtors early in the adversary proceeding in order to facilitate prompt

---

[5] See Bankruptcy Court Miscellaneous Fee Schedule, available at:
http://www.uscourts.gov/FormsAndFees/Fees/BankruptcyCourtMiscellaneousFeeSchedule.aspx.

consideration of whether a stipulation can be reached. However, AUSAs are "not required to impose any strict time limit for the Attestation."

After the adversary proceeding is filed, the AUSA should request that Education provide its litigation report. The Guidance makes clear that "Education is committed to supporting Department attorneys handling these cases." For each adversary proceeding, Education will provide with its litigation report to the AUSA a record of the debtor's account history, loan details, and, if available, an educational history. Importantly, the AUSA will share this information with the debtor. Debtor attorneys should request this information from the AUSA if it is not routinely provided. The information from Education could be helpful in preparing the Attestation form, if it has not yet been submitted, or could be used to supplement an already submitted Attestation.

Although the Guidance does not specifically address this point, the stated goal of the Guidance, to reduce litigation burdens on debtors and to simplify the "fact-gathering process," should mean that Department attorneys will not proceed with formal discovery in the adversary proceeding until a decision has been made that the case cannot be settled. Thus, the debtor's attorney may wish to request that the AUSA enter into a stipulation extending the time for the parties to make the initial discovery disclosures under Rule 7026(a)(1) and for the scheduling of the parties' Rule 7026(f) conference.

AUSAs are expected to consult with Education in each case, by sharing the completed Attestation and "conferring on an appropriate course of action." The initial litigation report that Education submits to the AUSA should include data Education has relating to the presumptions under the second *Brunner* factor and whether it considers that the debtor has made good faith efforts under the third *Brunner* factor. The Guidance states that this "process will ensure the final decision is informed by Education's experience administering student loans and its role as creditor."

The next step in the process is for the AUSA to make a recommendation on settlement in accordance with the Guidance. The AUSA shall then submit their recommendation, along with Education's recommendation, under the "standard procedures applicable in that attorney's component." This is apparently referring to the protocol within the local U.S. Attorney's office for obtaining review and approval of settlement offers in civil litigation.

If a recommendation to settle the case is approved, the final step is for Education and the debtor to "stipulate to the facts demonstrating that a debt would impose an undue hardship and recommend to the court that a debtor's student loan be discharged." While the Guidance notes that the stipulation is not binding on the bankruptcy court, consent judgments entered into by the parties in an adversary proceeding are routinely approved by bankruptcy courts.

## Application of the Guidance

### *Present Circumstances*

The first factor considers whether the debtor presently can pay the student loan while also maintaining a minimal standard of living, considering the debtor's income and expenses.  The Guidance instructs the AUSAs to rely in part upon the IRS Collection Standards to determine the debtor's allowable expenses.  The IRS Standards are used to "ensure more consistent and equitable treatment of debtors seeking discharge."  Attorneys will note that while many of the expense categories are similar to those under the means test in bankruptcy, there are some significant differences.

**Debtor's Income.**  In assessing present payment ability, the debtor's expenses are compared to the debtor's household gross income.  Unlike the means test in bankruptcy, gross income includes Social Security and unemployment benefit payments.  This gross income is reported on Line 11 of the Attestation, as a total amount from all sources and also separately listed.  If the debtor has filed a Schedule I in the bankruptcy case no more than 18 months before filling out the Attestation, the debtor can use the amounts listed in Schedule I if they have not changed.  Line 12 of the Attestation has the debtor check a box indicating the form of employment income verification (most recent tax return, four consecutive paystubs, or other documentation) the debtor is attaching to the Attestation, and the debtor can describe in Line 13 the information submitted to verify non-employment income.

**IRS National Standards.**  The first category of expenses is derived from the IRS National Standards.  These will look familiar to bankruptcy attorneys as it has the same categories that are on Official Forms 122A-2 and 122C-2: food; housekeeping supplies; apparel and services; personal care products and services; and miscellaneous.  Lines 14(a)(i) through (v) of the Attestation request that debtors affirm that their current monthly expenses do not exceed the amounts listed for each of these IRS National Standards.  Debtors must check a box for either "do exceed" or "do not exceed" next to each expense item. The dollar amount for each expense item based on family size is listed on the Attestation (the form will be updated annually to reflect adjustments to the IRS dollar amounts).  If the debtor's expenses for each item do not exceed the standards, no further inquiry is needed by the AUSA and the listed dollar amounts are allowed.

Line 14(a) ends with instructions (added to the current Attestation) stating that If the debtor answered that her expenses for any of the categories in Lines 14(a)(i) through (v) exceed the applicable amount, and the debtor would like the AUSA to consider any additional expenses for those categories, the debtor should list of the additional expenses and explain the need for such expenses in the space provided on the Attestation at the end of Line 14(a).  If the debtor's actual budget exceeds a particular expense amount, the Guidance states that the AUSA, in consultation with Education, should consider whether the debtor has a reasonable explanation for the additional expense and may allow it.

Exhibit N  Plaintiff's DO-ED/DOJ Bankruptcy Discharge Guidance of Student Loans
23-01004-smr  Doc#13  Filed 06/22/23  Entered 06/23/23 15:23:37  Main Document  Pg 17 of
Adversary Proceeding No.: 23-01004-smr

Confusingly, the instructions also state: "You do not need to provide any additional information if you answered that your total expenses did not exceed the applicable amount listed in subsection (vi) (emphasis in original)." This should mean that if the debtor adds all of their actual expenses for Lines 14(a)(i) through (v) and that total is less than the total amount in subsection (vi), it will not matter that their expenses for one of the particular categories exceed the IRS standard. For example, if the debtor is in a two-person family and their actual food expense in Line 14(a)(i) is $979 ($200 more than the IRS standard) because they have a special diet for medical reasons, the debtor would check the "do exceed" box, and under the prior form would have provided an explanation for the additional $200 expense. But if the debtor's actual expenses in total for all the expenses for Lines 14(a)(i) through (v) is $1400 ($210 less than the total for a two-person household) rather than the $1610 listed in Line 14(a)(vi), the instructions suggest that the debtor can check the "do not exceed" box, and it would seem that no explanation for the excess food expense for Line 14(a)(vi) is needed, and the AUSA will not question whether it is necessary. However, until some clarification is provided by the Department, better practice would be for the debtor to continue to provide an explanation for all excess expenses.

Line 14(a)(vi) provides a total amount for the IRS National Standards expense categories. next to each expense item and the total indicating whether the debtor's expenses are above or below the listed amount.

The current Attestation has an expense category in Line 14(b) for "Uninsured medical costs" (this was Line 14(a)(v) in the prior form). This category now has a description that uses the IRS terminology for "out-of-pocket" health care expenses (currently $75 for debtors under 65, and $153 for debtors 65 and older). Again, the debtor must check a box indicating whether her actual out-of-pocket medical costs either "do exceed" or "do not exceed" the IRS standard. Line 14(b) is followed by a section for the debtor to list and explain any out-of-pocket medical costs that exceed the IRS standard. For example, the debtor in the Sample Scenario (Exhibit B) states that she must pay $150 per month for inhalers and medication, not covered by insurance, for her daughter who has asthma. The explanation provided in the Sample Scenario states that because Ms. Smith has adequately explained this excess expense, she will be allowed the full $150 per month rather than $75 per month that is listed on Line 14(b).

**IRS Local Standards.** The Local Standards provide expense standards for the categories of housing, utilities, and transportation. These expense items are reported on Line 15(d) and 15(e) of the Attestation. Unlike the means test in bankruptcy, debtors are limited to their *actual expenses* for these expenses, and the Local Standards serve only as a cap on what is deemed reasonable. For example, if the debtor's actual monthly payment on an auto loan is $485 and the vehicle Ownership Costs under the IRS Local Transportation Expense Standards is $588, the AUSA should treat the expense as allowed and consistent with a minimal standard of living. However, if the debtor is paying $425 per month on gas and other expenses to operate the auto, and the Operating Costs under the IRS Standard is $307, the AUSA should limit the debtor to $307 for that expense. Similar to the treatment of the National Standards, the debtor

23-01004-smr Doc#13 Filed 06/22/23 Entered 06/23/23 15:23:37 Main Document Pg 18 of
Exhibit N Plaintiff's DO-ED/DOJ Bankruptcy Discharge Guidance of Student Loans
Adversary Proceeding No.: 23-01004-smr

can provide an explanation, probably on Line 15(f)(viii), as to why the additional $118 is needed to operate the auto, such as the need to travel a long distance to get to work and the increased cost of gas. The AUSA, in consultation with Education, should "carefully consider and accept" the debtor's reasonable explanation and allow the additional expense.

**IRS Other Necessary Expenses.** Similar to the means test in bankruptcy, the Guidance allows the debtor actual monthly expenses for some of the IRS Other Necessary Expenses categories if not deducted from the debtor's pay and actually being paid, including court-ordered alimony and child support payments; baby-sitting, day care, nursery and preschool costs; health insurance; life insurance; dependent care; and delinquent taxes. In addition, the debtor is permitted to list in this category payments made on other student loans the debtor is not seeking to discharge. These Other Necessary Expenses are consistent with a minimal standard of living as long as they are necessary and reasonable in amount. These expense items are reported on Line 15(f) of the Attestation. Line 15(f)(viii) permits the debtor to list and explain other necessary expenses that do not fall within the specific categories contained in Line 15(f) and not otherwise reported. For example, the debtor may describe here health care costs that are not covered by health insurance.

**Payroll Deductions.** Most payroll deductions, such as taxes, Social Security, health insurance, and union dues, are treated under the IRS Collection Standards as Other Necessary Expenses. While the Guidance does not refer to them in that manner, the debtor is permitted to list payroll deductions on the Attestation as a household expense in Line 15(a). The Attestation advises that the debtor can refer to the amounts for the same deductions that were listed on Schedule I or Forms 122A-2 and 122C-2. For contributions to retirement accounts, the debtor is asked to state whether these contributions are required as a condition of employment. However, the Guidance does not address how retirement contributions will be treated if they are voluntary and not a condition of employment.

**Reasonable Expenses Not Yet Incurred.** Significantly, the Guidance recognizes that a debtor currently may have actual expenses that are lower than needed for a minimal standard of living and may be foregoing certain expenses due to circumstances that the debtor is working to resolve. For example, the debtor and her children may be living with her parents until she is able to find an affordable apartment, or may be living in substandard or overcrowded housing until able to find more suitable housing. Similarly, the debtor may be forgoing or limiting spending on expenses such as childcare, dependent care, vehicle replacement or repair, technology, or healthcare. In this situation, the Guidance states that the AUSA should not conflate foregone expenses with an ability to make student loan payments and should use the debtor's projected expenses in assessing present and future financial circumstances. If the projected expenses do not exceed the Local Standards for those items, the AUSA need not "probe the debtor's calculation."

The Attestation (Line 17) gives the debtor an opportunity to identify and explain these projected expenses that the "debtor would incur if able to address needs that are unmet or insufficiently provided for." For example, on the Sample Scenario (Attachment B), the debtor

23-01004-smr Doc#13 Filed 06/22/23 Entered 06/23/23 15:23:37 Main Document Pg 19 of
27
Exhibit N Plaintiff's DO-ED/DOJ Bankruptcy Discharge Guidance of Student Loans
Adversary Procceeding No.: 23-01004-smr

states that she is living in a basement apartment at her mother's house, that it is impossible for her to continue doing so because her daughter is turning 10 and the living space is too small, and that she is hoping to move in a few months to an apartment for $1300 per month.

**Repayment Ability.** An evaluation of the first factor ends with a comparison of the debtor's income and expenses and a determination of whether the debtor has sufficient disposable income to make payments on the student loans. A critical question in this analysis concerns how to calculate the payment amount on the student loan. While the *Brunner* court referred to an ability to repay during the contractual term defined by the loan documents, Education and the Department often argued before the Guidance that courts should ignore the scheduled monthly payment and instead consider what the borrower's payment would be under an IDRP. *See* NCLC's Student Loan Law § 11.4.2.1.2a.

Under the Guidance, AUSAs are instructed to consult with Education to determine the monthly payment amount. In general, the AUSA should use the monthly payment amount due under a "standard" repayment plan for the loan, which is the payment amount required to pay the student loan within the remaining loan term.[6] The Guidance further states that "[e]xcept as required by controlling law, the Department attorney should not use the monthly payment amount available through income-driven repayment plan options as the comparator." When a student loan has been accelerated, based on payment default or otherwise, the AUSA should again consult with Education and use the "standard repayment amount either prior to default or as calculated if the loan were removed from default status."

The debtor is asked to list the current monthly payment for the loan in Line 6, and the month and year when the loan is scheduled to be repaid or when the loan went into default. The outstanding balance on the loan is provided in Line 5. The debtor's NSLDS report and information in Education's litigation report should help in answering these questions. Attorneys can get an estimate of the standard repayment amount on the loan, based on the loan amount, by using the Loan Simulator on the FSA website, www.studentloans.gov.

The debtor must deduct allowed expenses from gross income and list this monthly remaining or net income on Line 16. Unlike the bankruptcy schedules and means test forms, the Attestation form does not guide the debtor in performing this calculation.

If the debtor's allowable expenses exceed the debtor's income and $0 is therefore inserted on Line 16, the AUSA should conclude that there is no present ability to repay the student loan and the debtor's loan is eligible for discharge, subject to consideration of the other two factors of

---

[6] The monthly payments under standard plans are based on a maximum repayment period of ten years. For more recent Direct loan consolidation borrowers with loans that entered repayment on or after July 1, 2006, the standard loan repayment period varies depending on the total amount of student loans. 34 C.F.R. § 685.208(c), (j). This ranges from a ten-year repayment for consolidation loans less than $7,500 to thirty years of entering repayment for loans equal to or greater than $60,000. *See* NCLC's Student Loan Law § 3.2.

the test. If the debtor has sufficient income to make full student loan payments, no recommendation for settlement will be made. If the analysis shows that the debtor can pay some portion of the full payment, the AUSA should consider the potential for a partial discharge, as discussed below.

### Future Circumstances

The second factor under the *Brunner* test considers whether additional circumstances exist indicating that the debtor's hardship is likely to persist for a significant portion of the loan repayment period. This aspect of the test has been challenging, as it often requires debtors to prove a negative; that their future is as hopeless as their present. Before the Guidance, the Department and Education had taken the position in some cases, consistent with some of the more extreme court opinions, that the debtor must prove a "certainty of hopelessness" or "total incapacity." They typically would not have considered as eligible for discharge a debtor who has been stuck in low or modest paying jobs for many years, achieved only modest pay increases over that time, and maximized their income potential based on their education, experience and skills. *See* NCLC's Student Loan Law § 11.4.2.2.1.

The Guidance takes a much different approach in assessing the test's second factor. If the debtor shows that certain circumstances apply to their situation, there is presumption that the debtor's inability to repay will persist. A presumption exists if one or more of the following circumstances applies:

- debtor is age 65 or older;[7]
- debtor has a disability or chronic injury impacting their income potential;
- debtor has been unemployed for at least five of the last ten years;
- debtor has failed to obtain the degree for which the loan was procured; and
- loan has been in payment status other than "in-school" for at least ten years.

While these circumstances are generally self-explanatory, it is worth noting that a total and permanent disability in not required to create a presumption.[8] Moreover, unlike the position

---

[7] In Education's 2015 guidance letter, the agency stated that for a debtor who is approaching retirement, loan holders should consider the debtor's age when student loans were incurred and whether the debtor "chose to incur student loan at an older age." The obvious implication of that inquiry was that debtors should be penalized for pre-bankruptcy decisions to incur debt later in life. This was inconsistent with the *Brunner* second prong as a forward-looking test and fortunately was not included in the new Guidance.

[8] The first version of the Attestation referred to a "permanent" disability or chronic injury for the presumption. However, the current Attestation, in part III, Line 18, has deleted the word "permanent" and now refers to: "I have a disability or chronic injury impacting my income potential." These changes make it consistent with the Guidance.

Exhibit N Plaintiff's DO-ED/DOJ Bankruptcy Discharge Guidance of Student Loans
23-01004-smr Doc#13 Filed 06/22/23 Entered 06/23/23 18:23:37 Main Document Pg 21 of
Adversary Procceeding No.: 23-01004-smr

taken in the earlier 2015 guidance, the potential for the debtor to obtain an administrative
Total and Permanent Disability (TPD) nonbankruptcy discharge does not foreclose a debtor
from showing future inability to pay for purposes of a bankruptcy discharge. The Guidance also
notes that the debtor may, but is not required to, submit information from a treating physician
to show a disability or chronic injury. The presumption may exist "even in the absence of a
formal medical opinion."

The presumption based on loan payment status for a period of at least ten years includes
periods when the debtor has been in forbearance or participating in IDRPs. The only period
that is excluded is when the debtor was in an in-school deferment, typically when enrolled at
least half-time at an eligible school. For consolidation loans, the time the debtor was in
repayment on the original underlying loans counts towards the ten-year period.

If one or more of the circumstances creating a presumption apply, the debtor should check the
applicable boxes on Line 18 of the Attestation. For example, the debtor in the Sample Scenario
(Exhibit B) indicated that her student loans had been in repayment status for at least 10 years
and that she did not complete the degree for which she incurred the student loans. The debtor
also added an explanation on not getting a degree: "I was in nursing school but had to drop out
to care for my daughter. Without a degree, I cannot obtain employment as a nurse and cannot
increase my income."

For certain factors, such as a disability or chronic injury, the form requests that the debtor
describe the condition and how it affects the debtor's ability to work. Because this may require
the debtor to disclose highly sensitive personal information, such as medical or employment
records, the Attestation should not be attached to adversary complaint and filed with the court.
If for some reason it is filed with the court, the debtor's attorney may wish to file a motion
under Bankruptcy Rule 9037(d) requesting a protective order in which the court may, for cause,
limit or prohibit nonparties remote electronic access to the document.

The presumptions in the Guidance are rebuttable. However, the Guidance states that
circumstances supporting rebuttal "will likely be uncommon" and "must be based on concrete
factual circumstances" – "[m]ere conjecture about the debtor's future ability is not enough."
For some debtors, more than one of the circumstances may apply, which should make the
presumption more difficult to rebut. As noted earlier, any presumption applies for purposes of
settlement and cannot be used in court at trial if the case must be litigated.

The Guidance also provides that the presumptions are not the only way for a debtor to show
future inability to pay. Other facts and circumstances can be described on the Attestation by
the debtor and should be considered by the AUSA. For example, the Attestation in Line 19
permits a debtor who is employed to describe reasons why the debtor has not been able to
obtain employment in the field of the debtor's education or training, or why it is unlikely that
the debtor's pay will increase sufficiently to make substantial payments on the student loans.
Another circumstance that can result in a discharge settlement even without a presumption,
and identified in the Guidance, is where "the institution that granted the debtor's degree has

Exhibit N Plaintiff's DO-ED/DOJ Bankruptcy Discharge Guidance of Student Loans
23-01004-smr Doc#13 Filed 06/22/23 Entered 06/23/23 15:23:37 Main Document Pg 22 of
Adversary Procceeding No.: 23-01004-smr

closed, and that closure has inhibited a debtor's future earning capacity."[9] Any other circumstances that support the debtor's future inability to make payments should be described in the final section of Line 19 of the Attestation.

### Good Faith

The third factor under the *Brunner* test requires that the debtor show a good faith attempt to repay the student loans. In addition to whether the debtor has made payments on the loans, courts have considered whether the debtor made efforts to obtain employment or maximize income, and whether the debtor willfully or negligently caused the default. This requirement looks to the debtor's past conduct. While initially somewhat narrow in scope, Education and other student loan creditors have urged courts in litigation to inappropriately extend the good faith inquiry to matters beyond payment efforts. It has been used by some loan holders as a morality test in which the debtor's life choices and past conduct are called into question. Debtors in some cases had been forced to respond to extensive discovery that has probed into intimate details of their personal lives. *See* NCLC's Student Loan Law § 11.4.2.3.1.

The Guidance attempts to distance itself from some of the earlier formulations of the good faith inquiry. It initially notes that good faith may be shown in numerous ways and that the "good faith inquiry 'should not be used as a means for courts' or Department attorneys 'to impose their own values on a debtor's life choices,'" quoting Educ. Credit Mgmt. Corp. v. Polleys, 356 F.3d 1302, 1310 (10th Cir. 2004). It then shifts the analysis somewhat by setting out an initial inquiry that considers evidence of the debtor's bad faith, noting that this would clearly deny the debtor a discharge settlement, such as when a debtor has willfully contrived a hardship or abused the student loan system by fraudulently obtaining the student loans.

The Guidance then sets out certain objective factors that would demonstrate good faith. The debtor can establish good faith if at least one of the following steps has been taken:

- making a payment;
- applying for a deferment or forbearance (other than in-school or grace period deferments);
- applying for an IDRP plan;
- applying for a federal consolidation loan;
- responding to outreach from a servicer or collector;
- engaging meaningfully with Education or their loan servicer, regarding payment options, forbearance and deferment options, or loan consolidation; or

---

[9] The first version of the Attestation provided in Line 19 that the debtor could affirm that the debtor incurred loans in pursuit of "a degree I was unable to complete for reasons other than closure of the educational institution." This was inconsistent with the Guidance. This language has been replaced in the current Attestation, in Line 19, with: "I incurred the student loans I am seeking to discharge in pursuit of a degree from an institution that is now closed."

- engaging meaningfully with a third party they believed would assist them in managing their student loan debt.

The debtor can provide information about several of these factors in Part IV of the Attestation, in response to Lines 21 to 25. For example, the debtor should report payments that have been made on the loan, if any, in Line 21. Some of the information that can be reported about the debtor's good faith in Part IV may be contained in the litigation report that Education will prepare that is provided to the debtor.

The first version of the Attestation did not have a specific line containing a statement or affirmation for some of the listed factors, such as applying for a consolidation loan or engaging meaningfully with a third party, requiring the debtor to describe these efforts in response to the general question in Line 26. The current Attestation revises Line 26 and adds that in addition to describing any factors that would show good faith, such as efforts to obtain employment, maximize income and minimize expenses, the debtor can "also may include any efforts you made to apply for a federal loan consolidation, respond to outreach from a loan servicer or collector, or engage meaningfully with a third party you believed would assist you in managing your student loan debt."

The Guidance gives AUSAs discretion to consider "countervailing circumstances" that would potentially override this evidence of the debtor's good faith. This involves consideration of "the debtor's efforts to obtain employment, maximize income and minimize expenses."[10] Contrary to the goal of relying upon objective factors, the Guidance notes that in weighing considerations of good faith, "[i]ssues concerning employment, income, and expenses are case-specific and may be highly dependent on a debtor's family, community, and individual circumstances." Hopefully, highly fact-specific inquiries by AUSAs that probe whether the debtor has responsibly handled their finances or made certain life choices will be limited to exceptional cases. Debtors are given the opportunity in Line 26 of the Attestation to describe efforts they have made to obtain employment, maximize income and minimize expenses, and AUSAs are instructed to weigh this explanation in consultation with Education.

An extremely positive development, however, is the lengthy discussion of the weight that should be given to the debtor's actual payment history and enrollment in IDRP. This is a must read for debtor's attorneys. It begins by referring to CFPB supervisory reports that found that debtors have been wrongfully denied IDRP enrollment and Education's own studies that have "shown that the servicing of student loan debt has been plagued at times by administrative errors and dissemination of confusing and inaccurate information, and that these issues may have affected debtors' responses to their loan obligations." AUSAs are instructed that a debtor should not be disqualified for discharge based on good faith because the debtor may not have "meaningfully engaged with the repayment process due to possible misinformation, wrongful

---

[10] *In re* Mosko, 515 F.3d 319, 324 (4th Cir. 2008) (*citing In re* O'Hearn, 339 F.3d at 564).

IDRP determinations, or a lack of adequate information or guidance," and that AUSAs should not focus only on the recent loan history but instead should consider the entire life of the loan.

Most courts have held that debtors who clearly lacked sufficient income to make minimal payments can still show good faith and qualify for a discharge.[11] The Guidance adopts this reasoning and advises AUSAs that evidence that the debtor lacked financial means to pay should be considered. In addition, it is noted that Education may not have complete records about a debtor's loan history, and this lack of data should not invalidate the borrower's evidence.

Citing the many barriers debtors face in enrolling and participating in IDRPs, the Guidance emphatically states that non-enrollment in IDRP by itself does not show a lack of good faith. If a debtor has not enrolled in an IDRP, the AUSA is expected to first consider the debtor's response in Line 25 of the Attestation and should "accept any reasonable explanation or evidence supporting the debtor's non-enrollment in an IDRP." Acceptable explanations or evidence may include:

- that the debtor was denied access to, or diverted or discouraged from using, an IDRP, and instead relied on an option like forbearance or deferment;
- that the debtor was provided inaccurate, incomprehensible, or incomplete information about the merits of an IDRP;
- that the debtor had a plausible belief that an IDRP would not have meaningfully improved their financial situation;
- that the debtor was unaware, after reasonable engagement, of the option of an IDRP and its benefits; or
- where permitted under controlling case law, that the debtor was concerned with the potential tax consequences of loan forgiveness at the conclusion of an IDRP.

In sum, the Guidance anticipates that AUSAs should consider all evidence of a debtor's good faith and that they should not oppose discharge where the "debtor's IDRP non-enrollment was not a willful attempt to avoid repayment."

## Debtor's Assets

Under both the *Brunner* and totality tests, student loan creditors have argued that the debtor's ownership of certain assets, such as a home or car, should be considered, and that these assets, if liquidated, might pay off all or part off a student loan debt. Often these arguments are made

---

[11] *In re* Mosley, 494 F.3d 1320, 1327 (11th Cir. 2007) (failure to make any payments, by itself, does not establish lack of good faith); Educ. Credit Mgmt. Corp. v. Polleys, 356 F.3d 1302 (10th Cir. 2004) (same); *In re* Roth, 490 B.R. 908, 918 (B.A.P. 9th Cir. 2013) ("[L]ack of even minimal voluntary payments is not lack of good faith if the debtor did not have the financial wherewithal to make them.").

without consideration that the liquidation might only exacerbate the debtor's current hardship, forcing the debtor into more expensive housing or causing job loss due to lack of transportation. *See* NCLC's Student Loan Law § 11.4.2.1.4a.

The Guidance provides that AUSAs may consider the debtor's assets, but that they should not "give dispositive weight to the existence of assets that are not easily converted to cash or are otherwise critical to the debtor's well-being, and should be cautious in concluding that the existence of real property or other financial assets demonstrates a lack of undue hardship." While the Guidance does not take a position on whether the exempt status of property is dispositive, such as a home or retirement funds that may be fully exempt, it states that AUSAs "should be careful in considering such property in the undue hardship analysis."

Debtors are required to describe their assets in Part V of the Attestation. For Attestations that are submitted soon after a bankruptcy case is filed, it is unfortunate that the Guidance does not simply rely upon the detailed schedules (Schedule A/B) that the debtor has filed in the bankruptcy case. Although Part V does not have a line or question where debtors can describe the hardships they will face if forced to liquidate assets, that information should be provided in Line 32, Part VI of the Attestation, that permits the debtor to describe additional circumstances that support discharge.

## Partial Discharge

While some courts have held that the Bankruptcy Code does not give authority for granting a partial discharge, other courts have found that a debtor who has some future earnings potential, but not enough to pay the entire debt, may have only part of the debt discharged. *See* NCLC's Student Loan Law § 11.5. The Guidance recognizes that in circumstances where the debtor has some repayment ability, including when a debtor may be able to liquidate assets to pay a portion of the debt, a settlement that provides a partial discharge may be appropriate if not contrary to controlling case law.

While a partial discharge may seem attractive to a debtor who has an excessive amount of student loan debt, debtor attorneys should be cautious of recommending a partial discharge settlement when there are doubts about the debtor's future earning capacity or potential expenses. Debtors should also avoid consenting to a conditional judgment that provides that the entire debt will spring back and become nondischargeable if the debtor fails to make agreed-upon scheduled payments on the portion of the debt not discharged.

# NAVIENT.

PO BOX 9750
WILKES-BARRE, PA 18773-9750

WILLIAM R HAYWARD
609 OAK MDWS
SAN MARCOS TX 78666-8358

## WILLIAM, your Income-Based Repayment (IBR) plan has been approved on your eligible loans.

Your calculated IBR plan payment amount: $0.00
Plan begin date: 09/05/21
Plan end date: 08/05/22

**What you need to know**

- **You need to renew with documentation of income and certification of family size every year.** If you renew but fail to certify your family size, we must assume a family size of one for the year. We'll send you a reminder prior to the renewal due date.
- **If you don't renew with the above information by the deadline, your payment amount will increase.** Your payments will change to the 10-year standard payment amount calculated at the time that you initially entered the plan and Unpaid Interest will be capitalized (added to your loan balance).
- **If your financial situation changes, your Monthly Payment Amount can be recalculated.** If your income changes over the next 12 months, you can submit a request to base your payments off your new information.
- **You can exit the IBR plan whenever you want.** If you request to leave the plan, your payment amount will be recalculated based on the time remaining under the maximum 10-year repayment period and the balance of your loans when you discontinue the plan. Unpaid Interest at this time will be capitalized (added to your principal balance). You may not change to any other plan until you have made one full payment under a standard repayment plan or a payment under a reduced payment forbearance.

**What to expect**
We'll send you a billing statement that shows your new Monthly Payment Amount. If some of your loans are not currently in repayment, such as loans in a deferment, forbearance or paid ahead status, your monthly billing statement(s) will reflect a lower amount due until those loans have entered repayment.

If you don't receive your billing statement before your next due date, please continue making your payments as previously scheduled.

**We're here to help**
If you have any questions, visit us online or give us a call.

**Account number**
9660190037 - 1

**Date**
08/05/21

**Manage your account online**
Navient.com

**Contact us**
888-272-5543

Monday–Thursday,
8 a.m.– 9 p.m.
Friday, 8 a.m.– 8 p.m. Eastern

**Fax**
855-281-1351

Save money with Auto Pay: You may be able to earn an interest rate reduction by enrolling in Auto Pay. To enroll, log in to Navient.com and change your payment settings. Check your online account for benefit eligibility.

Page 1 of 2

Para comunicarse en Español con 'Atención al Cliente',
llame gratis al (888) 272-5543, y marque el numero correspondiente.

*9660190037155558899*



H595          SYSTEM          S                    0001

Exhibit P Plaintiff's DO-ED/DOJ Bankruptcy Discharge Navient of Student Loans
Adversary Procceeding No.: 23-01004-smr

**Important disclosure(s)**

*Credit bureau reporting*
We may report information about your account to credit bureaus. Late payments, missed payments, or default on your account may be reflected in your credit report.

*Credit reporting accuracy*
If you believe the information we are reporting to the consumer reporting agencies is not accurate or is incomplete, or you want to dispute it, please write us. Include your name, address and account number. Please identify the specific information in question, explain the basis of the dispute, and include any supporting documentation necessary to substantiate the basis of the dispute. Mail your letter to: Navient, P.O. Box 9500 Wilkes-Barre, PA 18773-9500.

*Your loan servicer*
Your loans are serviced by Navient Solutions, LLC (NMLS# 212430).

## Loan Information

| DISBURSEMENT DATE | ORIGINAL PRINCIPAL | UNPAID PRINCIPAL | INTEREST RATE | LOAN PROGRAM |
|---|---|---|---|---|
| 03/24/06 | $ 54,419.00 | $ 104,778.57 | 8.000 | SM |
| 03/24/06 | $ 70,709.22 | $ 208,355.47 | 8.000 | SM |

### Total  $ 313,134.01 with Int.

**Page 2 of 2**